# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD MICHAEL KLOCH, | : | |
| Petitioner, | : | 1:17-cv-0700 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| BARRY SMITH, *Superintendent;* | : | |
| PA STATE ATTORNEY GENERAL,: | | |
| Respondents. | : | |

## MEMORANDUM

## July 29, 2019

Petitioner Donald Michael Kloch ("Petitioner" or "Kloch"), a state inmate currently confined at the State Correctional Institution at Houtzdale, Pennsylvania, filed his "All-inclusive Amended Petition" (Doc. 5) for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 26, 2017, seeking relief from his convictions in Court of Common Pleas of York County, Pennsylvania, criminal case CP-67-CR-0006893-2012.  Initially, Respondents moved to dismiss the petition as untimely.  The Court denied the motion on October 30, 2017, and directed Respondent to file a Response to the petition.  (Doc. 14).  Following a sixty day enlargement of time, Respondents filed their response on February 5, 2018.  Petitioner filed his Traverse on February 16, 2018.  The Amended Petition is ripe for disposition. For the reasons that follow, the Court will deny the petition for writ of habeas corpus.

# I. **FACTUAL AND PROCEDURAL BACKGROUND**

On February 11, 2013, a jury found Kloch guilty of one count of attempted homicide, two counts of aggravated assault, three counts of terroristic threats, one count of false imprisonment, one count of unlawful restraint, three counts of simple assault, three counts of recklessly endangering another person, and one count of attempted involuntary deviate sexual intercourse, in Court of Common Pleas of York County, Pennsylvania, criminal case CP-67-CR-0006893-2012. (Doc. 18-2, p. 225).

The Superior Court set forth the following pertinent facts:

> [Kloch's] convictions arose from events that transpired on May 7, 2012, in Peach Bottom Township. At that time, the victim, Aerial Auble, was at [Kloch's] house purchasing and consuming drugs. Auble came and went from [Kloch's] residence several times that day. Eventually, after exchanging text messages with one Kacey Simon, Auble informed [Kloch] that Simon could get them a good deal on Percocet. [Kloch] gave Simon $800 and transported Auble and Simon to a house in Maryland. [n.1 The record variously identifies the amount of money as $800 and $900]. Simon went into the house, but never returned, and no one answered the door to the house when [Kloch] knocked. Simon initially had responded to text messages from Auble, but eventually stopped returning her messages.
>
> [Kloch] and Auble returned to [Kloch's] residence and went into his bedroom. [Kloch] announced his intent to go to Simon's house. He retrieved a double-barreled shotgun and loaded it. Auble attempted to grab her purse and leave, but [Kloch] prevented her. [Kloch] told Auble that she was responsible for him losing his money and that she needed to fix it. [Kloch] then repeatedly told Auble that she better be "a good

2

> piece of ass' for his money. [Kloch] grabbed Auble by the hair and the shotgun discharged through the floor near Auble's feet. [Kloch] pushed Auble onto the bed and, while holding her down, reloaded the shotgun. [Kloch] first tried to remove Auble's clothing and then exposed his penis and attempted to force Auble's face down to his groin, telling her to "suck his dick."
>
> At this moment, Auble's cellular telephone began to ring. [Kloch] grabbed the phone and hit Auble in the head with it which had the inadvertent effect of answering the telephone. On the other end was Auble's mother who overheard the sounds of their struggle. Auble's mother summoned Auble's father and the two of them, along with one Benjamin Pohl, went to [Kloch's] house. Ultimately, Auble's father and Pohl entered the house and broke down the bedroom door. [Kloch] threatened them with the shotgun, and a physical struggle for the gun ensued among [Kloch], Auble's father, and Pohl, with the gun twice discharging into the bedroom wall. [Kloch] eventually lost control of the gun and Auble, her father, and Pohl were able to make their escape. [Kloch] followed them out onto his front porch threatening that if he saw any of them again, he would kill them.

(*Id.* at pp. 80-81).

On May 30, 2013, he received a sentence of 8 ½ to 17 years imprisonment followed by 5 years of probation. (*Id.* at 227). Following the denial of post-sentence motions, he filed a timely appeal. (*Id.*). On July 8, 2014, the Superior Court of Pennsylvania affirmed his judgment of sentence. (*Id.*, citing *Commonwealth v. Kloch*, 105 A.3d 784 (Pa. Super. 2014) (unpublished memorandum).

3

On October 15, 2014, he filed a petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA.C.S.A. §§9541-9546. (*Id.*). The PCRA court appointed counsel. (*Id.*). Counsel filed an amended petition on February 2, 2015, raising the following issues:

> A. [Kloch] received ineffective assistance of counsel because trial counsel was not adequately prepared for trial.
>
> B. Ineffective assistance of trial counsel due to counsel's failure to call character witnesses on [Kloch's] behalf.
>
> C. Trial counsel was ineffective for failing to engage the services and present testimony of an expert in Firearms and Ballistics.
>
> D. Trial counsel was ineffective for failing to properly preserve the claim that the verdict was against the weight of the evidence for appeal.

(*Id.* at pp. 105-113). Following a hearing, the PCRA court issued an opinion denying relief. (*Id.* at 158-172). Kloch appealed to the Superior Court raising the following claim: "Whether the PCRA court erred by finding that [Kloch's] counsel was not ineffective for failing to call character witnesses when the only two witnesses to critical points of the events were [Kloch] and the victim, and such character evidence is of paramount important [sic] under such circumstances." (*Id.* at 227). The Superior Court affirmed the order of the PCRA court on July 8, 2016. (*Id.* at 232).

4

Kloch filed a second PCRA petition on October 10, 2016. (*Id.* at 235). He cited the issues as "first, whether trial counsel was ineffective at both the trial and appellate levels; and, second, whether PCRA appellate counsel was ineffective for unilaterally waiving trial counsel's ineffective preparation for trial issue (Error Issue #1) on appeal as an appellate issue." (*Id.* at 240). He restates the claims raised and disposed of in the Amended PCRA and adds that trial counsel was ineffective in failing to: "(8) to request a new trial on any timely grounds, including, but not limited to, juror misconduct for sleeping during the trial testimony of Mr. Kloch; or (9) in any other manner effectively or adequately be prepared to represent Mr. Kloch in either pre-trial matters, during the trial of this matter, in post-trial motions, or appellate proceedings." (*Id.* at 241). He also includes under the heading "[f]urther prejudice caused by trial counsel's lack of adequate preparation time", that he "was not consulted about, nor did he give his prior consent to, trial counsel admitting 'Guilt' in either Opening Statement or Closing Argument by stating Mr. Kloch was a 'liar and a thief.'" (*Id.* at 242). The PCRA court denied relief on November 16, 2016. (Id. at 249). Kloch did not appeal the denial of relief.

## II. ISSUES PRESENTED IN FEDERAL PETITION

1. I was denied the effective assistance of counsel when I rejected the plea bargain offered to me at my preliminary hearing because my attorney was unprepared at the time and gave me misleading and erroneous legal advice.

2. I was denied the effective assistance of counsel at trial because my attorney was not prepared for trial due to his inactions and deficiencies prior to trial in not investigating the case nor conducting *any* pre-trial discovery.

3. I was denied effective assistance of counsel at trial when attorney Farley Holt, Esq. stated twice (2 times) in his opening statement, without my prior knowledge and consent, that I was a "liar, thief, and prescription pill buyer", and again said the same thing in his closing argument.

4. I was denied the effective assistance of counsel at trial when attorney Farley Holt, Esq. twice (2 times) failed to request either a mistrial or the removal of jurors for misconduct in the following instances: (a) In the first instance the court noted that a couple of jurors were "nodding off" during the replaying of my (Mr. Kloch's) audiotaped statement to investigative Trooper Grothey given on May 9, 2012 after my arrest (Trial Transcript at 736); and, (b) the second instance occurred when Juror #366 was called to a sidebar conference by the Court for sleeping during my (Mr. Kloch's) trial testimony.

(Doc. 5, pp. 5-10).

## III. DISCUSSION

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.

*Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973). Petitioner's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). 28 U.S.C. § 2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> ...
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding....

28 U.S.C. § 2254. Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or

treaties of the United States." 28 U.S.C. § 2254(a). This limitation places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. *See, e.g., Reed v. Farley*, 512 U.S. 339, 354 (1994).

### A. Exhaustion

Habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The state courts must have the first opportunity to redress any claimed violation of a habeas petitioner's federal rights. *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). The habeas statute codifies this principle by requiring that a petitioner exhaust the remedies available in the courts of the State, 28 U.S.C. § 2254(b)(1)(A), meaning a state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court. *O'Sullivan*, 526 U.S. at 845 (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners

must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard*, 404 U.S. at 275 (1971); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. *Picard*, 404 U.S. at 278; *see also McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must present both "factual and legal substance" of claim to state courts). Mere reliance of state and federal claims on the same constitutional provision does not render the two claims substantially equivalent. *See Brown v. Cuyler*, 669 F.2d 155 (3d Cir. 1982); *Zicarelli v. Gray*, 543 F.2d 466 (3d Cir. 1976). Both the legal theory and the facts on which a federal claim rests must have been presented to the state courts. *See Picard*, 404 U.S. at 277; *Brown*, 669 F.2d at 158–61.

Relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *See*

9

*Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). Federal habeas courts " 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.' " *Lambrix v. Singletary*, 520 U.S. 518, 522 (1997) (quoting *Coleman*, 501 U.S. at 729.

     Kloch failed to present to the state courts the claim raised in Ground One, that he was denied effective assistance of counsel during the plea bargaining stage, to the state courts. It is therefore wholly unexhausted. To the extent that we liberally construe his catch-all ground in the Second PCRA, that counsel was ineffective in that he failed to "effectively or adequately be prepared to represent Mr. Kloch in either pre-trial matters, during the trial of this matter, in post-trial motions, or appellate proceedings," he fares no better. That claim is also unexhausted; Kloch failed to appeal the PCRA court's order denying his Second PCRA petition to the Superior Court. (Doc. 18-2, pp. 241, 249). Ground Two is also unexhausted. The claim was raised in Kloch's Amended PCRA Petition. However, it was not included in the appeal to the Superior Court. Likewise, the ineffective assistance claims presented in Grounds Three and Four are unexhausted. Although Kloch raised the claims in his Second PCRA, he failed to pursue an appeal of the PCRA court's order denying relief. (*Id.* at 241, 242, 249).

Kloch initially takes the position that he has exhausted all ineffective assistance of counsel claims. He argues "[f]rom the beginning with my PCRA filing in state court, and subsequent appeal in the Superior Court of Pennsylvania, Middle District, the issue raised has always been the ineffective assistance of counsel." (Doc. 19, p. 1). He relies on his Statement of Errors Complained pursuant to PA.R.A.P. 1925(b) filed in his Superior Court appeal of the denial of his PCRA petition. He contends that the ineffective assistance of trial counsel is the first error raised in his statement of matters complained of on appeal. (*Id.* at 7, 8). His argument fails as a general ineffective assistance of counsel claim does not meet the requirement that both the legal theory and the facts on which a federal claim rests must have been presented to the state courts. *Picard*, 404 U.S. at 277; *Brown*, 669 F.2d at 158–61. In considering Kloch's collateral relief petitions, the PCRA court could not have been expected, *sua sponte*, to consider or contemplate ineffectiveness claims not raised.

### B. Procedural Default

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, as is the case here, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' 28 U.S.C. §

2254(b). In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)." *McCandless*, 172 F.3d at 260.

To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v.*

*United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

Respondents argue that the petition should be denied because Kloch's claims are procedurally defaulted and he does not establish sufficient cause and prejudice to excuse the default. (Doc. 18, p. 7). Kloch relies on *Martinez v. Ryan*, 566 U.S. 1 (2010) to excuse the procedural default. He argues that "[a] court-appointed attorney's errors during an appeal on direct review, which occurred in this case by my court-appointed counsel's failure to proceed on Issue #1, *i.e.* ineffective assistance of counsel, of my direct appeal (Exhibits "A & B"), does provide cause for a procedural default. If the attorney appointed by the State (I was represented by a court-appointed public defender in my PCRA appeal to the Superior Court) to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims." (Doc. 19, p. 3).

The *Martinez v. Ryan*, 566 U.S. 1 (2010) case recognized a "narrow exception" to the general rule that attorney errors in collateral proceedings do not establish cause to excuse a procedural default. Specifically, *Martinez* holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. To successfully invoke the *Martinez* exception, a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," *id.* at 14; and that petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding. *Id.* at 17; *see also Glenn v. Wynder*, 743 F.3d 402, 410 (3d Cir. 2014). Both prongs of *Martinez* implicate the controlling standard for ineffectiveness claims first stated in *Strickland v. Washington*: (1) that counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. 466 U.S. 668, 687 (1984).

Kloch raised the ineffective assistance claims in Grounds Three and Four in his Second PCRA petition. We again liberally construe Ground One to be included in the Second PCRA petition. Kloch does not argue that his initial collateral proceedings counsel was ineffective. His argument in both his Second PCRA and the Traverse filed in this action is limited to the ineffectiveness of

14

PCRA appeals counsel. (Doc. 18-2, pp. 240, 247, 248; Doc. 19, pp. 2,-6). The *Martinez* exception applies only to the effectiveness of counsel in an initial collateral proceeding. We therefore have no grounds on which to excuse the procedural default of these claims.

With regard to the claim in the Second Ground, Kloch seeks to excuse the default based on PCRA appellate counsel's decision to abandon this issue during the appeal to the Superior Court. He contends that the ineffective assistance of trial counsel is the first error raised in his statement of matters complained of on appeal and that, without his knowledge or consent, his court-appointed appellate counsel limited his appeal to the second error and "[t]herefore, the Respondent's claims of waiver or failure by me personally to exhaust my state remedies causing a procedural default are without merit." (*Id.* at 2). It is clear that the ineffectiveness, if any, would have occurred during the appeal process, not the initial collateral proceeding. It would therefore be attributable to PCRA appellate counsel, not the initial PCRA proceedings attorney. Because the *Martinez* exception only applies to the effectiveness of counsel in an initial collateral proceeding, not an appeal, it cannot form the basis for excusing the procedural default of this claim. *See Davila,* 137 S.Ct. at 2065.

Kloch fails to identify some objective external factor which prevented him from complying with the state's procedural rules and he does not demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. Nor is there any argument or indication that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496. His claims are therefore procedurally defaulted and federal review is barred.

## IV. **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322 (2003). Petitioner fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Kloch from appealing the order denying his petition so long as he seeks, and obtains, a

certificate of appealability from the Third Circuit Court of Appeals. *See* FED. R. APP. P. 22(b)(1).

## V. CONCLUSION

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied.

A separate Order will enter.